## KRIEGSHEIM (REIMER, Com'r of Immigration, et al. Third Party Plaintiffs) v. GARDNER et al.

District Court, S. D. New York.

Feb. 25, 1941.

Sidney Poller, of New York City, for plaintiff.

John T. Cahill, U. S. Atty., of New York City (John B. Creegan, Asst. U. S. Atty., of New York City, of counsel), for defendants and third party plaintiffs.

Gaspare M. Cusumano, of New York City (Walter H. Schulman, of New York City, of counsel), for third party defendants.

BYERS, District Judge.

On July 26, 1938, Heinz Baum and Frieda Baum, his wife, arrived in this country on the S/S Veendam, and being aliens were detained at Ellis Island. To secure their entry for a limited stay, two U. S. Treasury bonds of $500.00 each were deposited with the Immigration authorities, and covering receipts were issued to the plaintiff. Presumably this was done in conformity with 8 U.S.C.A. § 158, although it is not so made to appear.

The said aliens departed this country on November 24, 1938, whereby the said bonds became subject to release to their rightful owner.

This action was brought by complaint filed September 28, 1939, against the first-named defendants, to accomplish the return of the bonds to the plaintiff.

Meanwhile and about October 22, 1938, written notice had been formally given to the defendants that the $1,000.00 which had been deposited to secure the Baums' entry (the method whereby that was transformed into the two U. S. Treasury bonds has not been disclosed) was actually the

property of one Arthur Otto Heinig—also an alien whose quota or non-quota status has not been revealed—and that he designated Miss E. (Ethelyn) Gardner as the person to receive the money on his behalf, since he was forced to leave this country "suddenly * * * for business reasons".

The said defendants thereupon obtained an order of this court, as third party plaintiffs, to serve upon Heinig and Gardner a summons and third party complaint, as permitted by Federal Rules of Civil Procedure, Rule 14, 28 U.S.C.A. following section 723c. Seemingly compliance with that order was had by delivering a third party complaint to an attorney at law representing these persons.

A notice of appearance for them was served and filed on April 18, 1940, together with an answer containing a counterclaim asking that the bonds be delivered to the third party defendant Gardner.

I deem the question of jurisdiction over the defendant Heinig to be open to serious question. The file contains no proof of service upon him; nor does the instrument which designates the defendant Gardner as the person to whom the deposit is to be paid, purport to clothe her with authority to bring or maintain suit for and on behalf of Heinig, nor to employ an attorney for that or any other purpose.

There has been no proof offered to establish that Gaspare M. Cusumano, the attorney who filed the notice of appearance, derived his authority from any act of the defendant Heinig apart from the letter of October 21, 1938, which is loosely called a power of attorney.

That this is important to the controversy will appear presently.

The plaintiff testified at the trial to the effect that he had been employed by Heinig in an indefinite capacity, on the day that the Baums were detained (which was also the day of Heinig's arrival with them on the same vessel), in connection with the contemplated operation at the World's Fair of a game generally resembling roulette in appearance, but intended so to function that winning play would seem to be a matter of skill rather than chance. Baum was said to be the owner of two such devices, and seemingly, without his presence and cooperation, the venture could not be maintained.

All this is supposed to have been discussed between the plaintiff and Heinig during a trip they made to Ellis Island for the purpose of securing the said release, and while they were there waiting to comply with the necessary formalities.

Assuming the conversations to have occurred in general accord with plaintiff's version, it is evident that the release of the Baums was the need of the moment, and the employment of the plaintiff by Heinig was a subordinate consideration, which would never become important until the essential object of the trip had been accomplished.

At Ellis Island, Heinig produced $900.00, of which one-third was his own, and two-thirds had been borrowed that day from his female companion; the remaining $100.00 was obtained by him from Baum, and thus $1,000.00 was deposited, and the entry of the Baums accomplished. The money was handled by the plaintiff, and the receipts for the two $500.00 bonds were issued to him. As has been said, the transmutation of the cash into the securities has not been explained.

This much is clear: The $1,000.00 was the property of Heinig, as the plaintiff himself deposed; he asserts his present claim to the bonds on the theory that the deposit was agreed between Heinig and himself to be "some sort of a guarantee for my (his) services". Again: "He thought $1,000.00 was adequate compensation for the services I was to render for the coming eight or nine months."

It is also clear that the plaintiff does not assert that the receipts for the bonds were ever redelivered by Heinig to him, after he put them in Heinig's hands on the day following the release of the Baums, which was done at Heinig's request.

Probably the plaintiff did render some services to Heinig in trying to make the machines operate, after getting them through the Customs, and in writing a few letters to those who might afford accommodations in which the ostensible lure of the game might find expression; but the entire venture was abandoned in about two months, and shortly both the Baums and Heinig found it convenient to leave the United States, as has been said.

Since the bonds and the deposit constituted, according to the plaintiff, a guarantee that he would be paid $1,000.00 for eight months' services, it follows that, for only a one-quarter performance by him, he cannot resort to the fund in its entirety,

because the extent to which he might be entitled to be paid anything would depend upon proof, first, that he was hired upon other than a contingent basis; second, the nature and extent of his services with some particularity; and third, the reasonable value thereof, as to which no proof was offered.

The first requirement would invite testimony from Heinig, because the creation of the contractual relation depended upon his expressed intention, as well as that of the plaintiff. Thus the jurisdiction of the court over Heinig is requisite to adjudication as to this essential fact.

While the judgment sought is the delivery of· the bonds, there has been no attachment of them; nor is it deemed that the notice of appearance filed for Heinig is legally sufficient to confer jurisdiction over him, or his property. He was last thought to be in an internment camp in Nancy, France, at an undisclosed date in 1940, but his present whereabouts are unknown; the so-called power of attorney to the defendant Gardner is merely embodied in an explanatory letter addressed to the "Chief Officer of Immigration", which reads in conclusion:

"However, on my departure, I am leaving my Power of Attorney to Miss E. Gardner, 285 W. 12th St. N. Y. City whom I wish you to kindly confer with. She has the receipts for the Departure Bonds, and I name her as the person to whom you pay the money, in my stead, under Bond for the aliens Heinz and Frieda Baum, living now at 232 E. 87 St., c/o Paul, N. Y. City.

"As the foregoing is a true statement of the facts which I swear to before a U. S. (sic) Notary Public, I feel sure you will take care of my interests in the best manner.

"Thanking you, I remain,
    "Very truly yours,
                "Arthur Otto Heinig
"State of New York
"County of New York
"Sworn to and subscribed before me this 21st day of Oct. 1938.
            "Charles M. Berkel
            "Notary Public, Bronx County
    "Certificate filed in New York County, N. Y." etc.

■ The third party defendant Gardner was therefore constituted an agent to receive payment, but she did not acquire authority to institute legal proceedings (see Restatement of the Law, Agency, § 72, subd. d), much less to cause an attorney at law to submit to adjudication, on behalf of her principal, this question of the plaintiff's employment, and the amount, if any, of the compensation which he may be thought to have earned.

■ Since by the plaintiff's own showing, he is seeking redress from the property of another, it must be clear that he cannot succeed in an action which is framed on the theory, as stated in the complaint, that the property is in fact his, thus:

"First: On or about July 26, 1938, plaintiff, as owner, deposited with the defendants two United States Government bonds * * * to guarantee the voluntary departure of two aliens, Heinz Baum and Frieda Baum."

Then follow allegations of the departure of those persons, demand for the bonds, and refusal.

The plaintiff's proof shows that the $1,-000.00, and hence the bonds, were not his, but the property of the third party defendant Heinig.

The plaintiff's assertion, that the bonds were agreed to constitute a guarantee fund, is not persuasive; the chances are that Heinig, for reasons which can be only conjectured, induced the plaintiff to handle the transaction in his own name, since he is said to be a naturalized citizen. Probably the hiring of the plaintiff (who .was then, and for some months thereafter continued to be, unemployed) was discussed, and probably Heinig assured him that he would be paid. I cannot find that there was an agreement to earmark the $1,000.00 as security for that compensation, particularly as the testimony of the witness Rudolph is deemed to be credible, that she provided $600.00 to Heinig in the plaintiff's presence, to enable him to accumulate the necessary funds for the Baums' release; that must be taken with the plaintiff's statement that he knew that $100.00 was also advanced by the latter. In other words, of the $1,-000.00, $700.00 was loaned to Heinig, and that would cause the ordinary person to be chary of relying upon the entire sum as a guarantee to him of anything. If he did so view it, I cannot account for his failure to secure some memorandum in writing of the mutual understanding, which would have been characteristic of ordinary business sagacity.

Moreover, it appears that the plaintiff learned, from Heinig at least a month prior to the latter's hurried return to Europe,

of the abandonment of the venture which was discussed on July 26, 1938. During that time he was in a position to assert whatever legal rights he believed to be his, and his failure to act during that interval is a circumstance of major significance.

So far as the third party defendant Gardner is concerned, probably enough has been said to indicate the legal infirmity of her position. That which she asserts to be a power of attorney is inadequate to enable her to bring suit to recover the bonds. The instrument itself is not acknowledged, which is probably not a destructive criticism, since it does not come within Section 32-a of the Personal Property Law of New York; but it may indicate one reason why the first-named defendants would view it askance.

In view of the foregoing, the findings are:

(1) The plaintiff is not the owner of the bonds described in the complaint; nor did he use his own funds in making the deposit of $1,000.00 to enable Heinz and Frieda Baum to accomplish their release from the custody of the Immigration authorities on or about July 26, 1938.

(2) This court has not obtained jurisdiction over the third party defendant Arthur Otto Heinig in this cause.

(3) The third party defendant Ethelyn Gardner is not shown to possess the legal status to entitle her to recover the subject-matter of this cause.

### Conclusion

The complaint and the third party counter-claim must be dismissed.

Settle judgment and decree.